UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| MELISSA RINEHOLT, | ) | |
|    Plaintiff | ) | |
| | ) | |
| v. | ) | 1:08-cv-5 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | Edgar/Carter |
|   Commissioner of Social Security | ) | |
|    Defendant | ) | |

<u>REPORT AND RECOMMENDATION</u>

This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner denying the plaintiff a period of disability, disability insurance benefits, and supplemental security income under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 423, and 1382.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a Report and Recommendation regarding the disposition of:

(1)     The plaintiff's motion for summary judgment (Doc. 9).

(2)     The defendant's motion for summary judgment (Doc 13).

For the reasons stated herein, I RECOMMEND the decision of the Commissioner be AFFIRMED.

<u>Plaintiff's Age, Education, and Past Relevant Work Experience</u>,

Plaintiff was 32 years old at the time that the ALJ issued her decision, and had completed high school in special education (Tr. 559). Plaintiff testified that the reason she could not work was that she was easily angered and could not work around people; had a hard time following

directions; and had difficulty with memory (Tr. 563). Plaintiff also complained of seizures (twice per month) since she stopped taking her seizure medication due to lack of income, and added that the seizure medication was effective, though it made her sleepy (Tr. 568-70, 575). Plaintiff also testified to mood swings, not wanting to leave her house, migraine headaches (once per week), and panic episodes (Tr. 570-71, 573-74, 576-77).

Plaintiff's daily activities included making her bed, preparing food, watching television and visiting a neighborhood activity center, where she played games with neighbors (Tr. 578).

Plaintiff had past work experience as a cashier, fast food cook, cafeteria server, machine operator, child care worker, sock presser, press operator, mower operator, and photographic spotter (touches up photographs) (Tr. 580).

## Applications for Benefits

Plaintiff seeks judicial review of the Social Security Administration's (Agency) final decision denying her applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d), and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3). After a hearing, an Administrative Law Judge (ALJ) found that Plaintiff was not disabled, and thus was not entitled to disability benefits (Tr. 15-23). The Appeals Council then denied Plaintiff's request for review of the ALJ's decision (Tr. 5-8), thereby making the ALJ's decision the Agency's final decision for purposes of judicial review. 20 C.F.R. § 404.981.[1] The Court has jurisdiction under 42 U.S.C. § 405(g).

---

[1] Because the relevant sections of the SSI regulations are largely identical to the DIB regulations, I will cite only to the DIB regulations. The parallel sections of the SSI regulations may be found at 20 C.F.R. §§ 416.900-.999 and 20 C.F.R. §§ 416.1400-.1499.

2

Standard of Review - Findings of ALJ

Disability is defined as the inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The burden of proof in a claim for social security benefits is upon the claimant to show disability. *Barney v. Sec'y of Health & Human Servs.*, 743 F.2d 448, 449 (6th Cir. 1984); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hephner v. Mathews*, 574 F.2d 359, 361 (6th Cir. 1978). Once the claimant makes a prima facie case that she cannot return to her former occupation, however, the burden shifts to the Commissioner to show that there is work in the national economy which claimant can perform considering her age, education, and work experience. *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975). "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers because it

presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986).

As the basis of the administrative decision of July 21, 2006, that plaintiff was not disabled, the ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2005.

2. The claimant has not engaged in substantial gainful activity since January 8, 2002, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: a seizure disorder, borderline intellectual functioning with a history of a learning disorder, obesity, asthma, depression, and anxiety with panic attacks and symptoms of agoraphobia (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform unskilled and lower-level semiskilled work activity, at any exertional level, which avoids workplace hazards and work with the general public.

6. The claimant is capable of performing past relevant lower-level semiskilled work as a photo laboratory spotter. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a "disability," as defined in the

4

Social Security Act, from January 8, 2002 through the date of this
decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 17-23).

Review of Evidence

Medical Evidence:

In October 2001, Drs. Sharma, who cosigned, but did not examine, (Tr. 531-37) and McGuire, both psychologists, performed a consultative examination (Tr. 274-81).[2] They diagnosed major depression severe with psychotic features, panic disorder with agoraphobia, and mild mental retardation, and rated Plaintiff's Global Assessment of Functioning (GAF)[3] at 31-47 (serious-to-major impairment) (Tr. 280). Full scale IQ was equal to 67 (64 to 71) but the diagnosis indicated Plaintiff functioned at or near the cusp of mild mentally retarded and borderline ranges of intellectual ability (Tr. 279-80).

In January and February 2002, a State Agency psychological consultant[4] reviewed the evidence of record and found that, based on Plaintiff's adaptive functioning (past work and daily activities), she was not mentally retarded, but more likely had borderline intellectual functioning.

---

[2]"A consultative examination is a physical or mental examination or test purchased at [the Agency's] request and expense from a treating source or another medical source, including a pediatrician when appropriate." 20 C.F.R. § 404.1519.

[3]The GAF scale is a measure of the individual's overall level of functioning or symptom severity, whichever is worse, and is based only on psychological, social, and occupational functioning, not physical or environmental limitations. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32-34 (4th ed. text revision 2000).

[4]"State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." 20 C.F.R. § 404.1527(f)(2)(I). These consultants are members of the teams that "make determinations of disability at the initial and reconsideration levels of the administrative review process." 20 C.F.R. § 404.1527(f)(1).

5

He questioned any assessment of mild mental retardation as being inconsistent with work experience and adaptive functioning (Tr. 298). The psychologist also opined that Plaintiff was capable of at least simple work and was capable of adapting to infrequent changes in work routine and mild levels of work stress (Tr. 298, 302).

In March 2002, Dr. Holland, a physician, performed a consultative examination (Tr. 304-06). Dr. Holland reported Plaintiff had a seizure disorder that was well controlled with medication, and opined that Plaintiff had no physical limitations (Tr. 306).

In March 2004, Drs. Sharma, who cosigned but did not examine, (Tr. 531) and McGuire again performed a consultative examination (Tr. 317-25). Testing resulted in a full scale IQ of 72 in the range of borderline intellectual ability (Tr. 323). They diagnosed a mood disorder, an anxiety disorder, and borderline intellectual functioning (Tr. 324). They also rated Plaintiff as moderately limited in several areas (ability to attend and recall, ability to interact socially, ability to sustain effort) (Tr. 324-25).

Later in March 2004, Dr. Regan, a psychiatrist and State Agency medical consultant, reviewed the evidence of record (Tr. 336-52). Dr. Regan opined that Plaintiff had a mood disorder, an anxiety disorder and borderline intellectual functioning, but that Plaintiff was capable of simple work tasks with limited public exposure (Tr. 348,352).

In June 2004, Dr. Gibson, a neurologist, performed a consultative examination (Tr. 353-54). Plaintiff complained that she had major seizures every few months and small seizures a lot of times at night (Tr. 353). Dr. Gibson diagnosed seizure disorder, likely with some degree of cognitive deficit (Tr. 354). Dr. Gibson opined that Plaintiff's limitations included driving, heights, operation of machinery, and isolation (Tr. 354).

Later in June 2004, a State Agency medical consultant reviewed the evidence of record and stated that he agreed with Dr. Gibson's functional assessment (Tr. 360).

In December 2004, Drs. Sharma, who again cosigned, but did not examine (Tr. 531) and McGuire performed another consultative examination (Tr. 405-13). They diagnosed mood disorder, anxiety disorder, pain disorder and borderline intellectual functioning (Tr. 411-12). They also rated Plaintiff as moderately limited in several areas (ability to adapt to change, ability to interact socially, ability to sustain effort) (Tr. 412).

In February 2005, Dr. Livingston, a State Agency psychological consultant, reviewed the evidence of record and concluded that Plaintiff had borderline intellectual functioning, a cognitive disorder, a mood disorder, and an anxiety disorder, but that Plaintiff could perform simple tasks with normal supervision and would do best in small groups working with objects rather than people and did not meet or equal any listing (Tr. 415, 417, 419, 426, 430).

Progress notes through July 2005 from Dr. Han, a neurologist, indicated that Plaintiff's seizure disorder was well controlled (Tr. 433-37). Dr. Han also indicated that Plaintiff could return to work, but should not drive (Tr. 435).

In June 2006, Dr. Sharma performed a consultative examination in which he reviewed the previous three evaluations (Tr. 531-37). Dr. Sharma diagnosed major depression, anxiety disorder, cognitive disorder and borderline intellectual functioning (Tr. 537). He also rated Plaintiff's GAF at 41-45 (serious impairment) (Tr. 537). A Becks Anxiety Inventory (BAI) was administered. A score of 39 indicated severe anxiety (Tr. 535). A Beck's Depression Inventory (BDI-II) was administered. A score of 51 indicated severe depression (Tr. 535). Dr. Sharma also completed a form indicating that Plaintiff had a good ability to follow simple job instructions; a

7

fair ability to follow detailed, but not complex job instructions; a fair ability to relate with co-workers and supervisors; a fair ability to maintain attention and concentration; a poor ability to deal with work stresses; a poor ability to function independently; a poor ability to behave in an emotionally stable manner; a poor ability to relate predictably in social situations; and a poor ability to demonstrate reliability (Tr. 538-41).

Vocational Expert (VE) Testimony

The ALJ asked the vocational expert whether Plaintiff could perform any of her past work if she had no physical limitations but had non-exertional limitations of being unable to perform detailed tasks, able to perform simple tasks, unable to relate to the public but able to relate adequately to supervisors and co-workers and having a seizure disorder such that she was limited to simple tasks with limited exposure to the public, and had to avoid hazards such as machinery and heights (Tr. 580-81). The vocational expert indicated that Plaintiff could perform her past work as a photograph spotter (Tr. 581).

Issues Raised

Plaintiff contends the ALJ erred in the following ways:

1) By applying an improper legal standard in evaluating listing 12.05C for mental retardation.

2) By basing her finding Plaintiff was capable of her past work on a hypothetical question posed to the VE that did not include all of Plaintiff's functional limitations.

3) By failing to accept the opinions of the Commissioner's Psychological Experts.

4) By failing to provide specific findings or analysis regarding the physical and mental demands of Plaintiff's past work.

Analysis

1) Plaintiff argues that she meets Listings 12.05C, and is, therefore, entitled to disability benefits. A plaintiff bears the burden of proving that her condition meets a Listing. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6th Cir. 1987). To support a claim of disability based upon a listed impairment, a claimant must bring forth evidence his condition satisfies **all** of the requirements of the pertinent Listing. *See* 20 C.F.R. §§ 404.1525(c)), (d); *Hale*, 816 F.2d at 1083; *King v. Heckler*, 742 F.2d 968, 973-74 (6th Cir. 1984) (to meet the requirements of a listed impairment, claimant must meet all of the elements). It is insufficient that a claimant comes close to meeting the requirements of a listed impairment. *See Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986). Here, the record includes some evidence plaintiff was diagnosed with mental retardation. She was in special education and this provides evidence to support an onset of the impairment before age 22. There were no IQ scores during this period. However, I conclude there are other reasons why Plaintiff does not meet Listing 12.05C and the ALJ properly determined at step three that plaintiff did not have an impairment that was presumptively disabling because it met or equaled a Listing. *See* 20 C.F.R. § 404.1250(d). The ALJ has the final responsibility for deciding the ultimate legal question of whether a Listing is met or equaled. *See* 20 C.F.R. §§ 404.1526(d), 404.1527(e)(2).

Section 12.05 of the Listings sets the requirements for establishing disability based on mental retardation. Listing 12.05 in relevant part, provides:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

D. A valid verbal, performance, or full scale IQ of 60 through 70, or in the case of autism, gross deficits of social and communicative skills, with either condition resulting in two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

Mental retardation is a development disorder characterized by significantly subaverage intellectual functioning as well as deficits in adaptive behavior, such as communication, self-care, and social skills. *Diagnostic and Statistical Manual of Mental Disorders DSM-IV,* 41 (American Psychiatric Association, 4th ed. text revision 2000). The record fails to establish that plaintiff meets the criteria or requirements of Listing § 12.05C because the ALJ rejected the one IQ score that would place Plaintiff in the Mentally Retarded range.

The Supreme Court has emphasized that "for a claimant to show that his [her] impairment matches a listing it must meet ***all*** of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990) (emphasis in original). In order to meet any Listing,

10

including the Listing for mental retardation, a claimant must first establish that she satisfies the diagnostic description for the listed impairment on the basis of medically acceptable clinical and laboratory diagnostic techniques. *See* 20 C.F.R. § 404.1525(c) ("If the medical findings needed to support a diagnosis are not given in the [general] introduction [to the listing section] or elsewhere in the listing, the diagnosis must still be established on the basis of medically acceptable clinical and laboratory diagnostic techniques."); 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.00A ("If your impairment satisfies the diagnostic description in the introductory paragraph [of Listing 12.05] *and* any one of the four sets of criteria, we will find that your impairment meets the listing") (emphasis added); *see also Wilkinson o/bo/ Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (in order to meet a listing, the claimant must have a diagnosed condition that is included in the listing and provide objective medical reports documenting that his [her] condition meets the specific criteria of the applicable listing).

Here, Plaintiff argues she does meet the criteria of Listing 12.05C because she has been assessed as mentally retarded before age 22 (Doc. 10, Plaintiff's Brief pp. 3-8 and Doc 15, Plaintiff's Reply Brief at p. 2). Although there is no IQ score in the record during the developmental period, there is evidence in the form of her early educational record to show she was regarded as Mentally Retarded.

Listing 12.05C requires that the Plaintiff be mentally retarded (defined as significantly subaverage general intellectual functioning with deficits in adaptive functioning); have a valid verbal, performance or full-scale IQ of 60-70; and have a significant additional work related limitation of function. 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.05C

Here, the ALJ found that Plaintiff's adaptive functioning, based on her past work history

11

and significant independent living, were not sufficient to support a finding that Plaintiff met the Listing. He concluded those factors belied her IQ score in the range of 60 to 70 (Tr. 18). Plaintiff asserts the ALJ created her own requirements for meeting the Listing when she found Plaintiff's IQ score to be invalid because of: 1)adaptive functioning, 2) A history of semi-skilled work activity and, 3) Significant independent living (Doc 10, Plaintiff's Brief, p. 4). The Commissioner points to the facts of *Cooper v. Comm'r of Soc. Sec.*, No. 06-5606, 2006 WL 543059 (6th Cir. Feb. 15, 2007) ("Yet, it is not enough for a claimant to point to one IQ score below 71; the claimant must also satisfy the 'diagnostic description' of mental retardation in Listing 12.05.

      In this case there is some evidence of mental retardation or significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, before age 22 (Tr. 144, 290). However, with the exception of Plaintiff's first consultative examination in October 2001, Plaintiff was consistently and repeatedly diagnosed with borderline intellectual functioning, not mental retardation, as required by the Listing (Tr. 298, 324, 348, 411-12, 415, 537). Furthermore, this is the only evaluation with a full scale IQ score in the mild mentally retarded range and it was noted in that same evaluation that Plaintiff has functioned at or near the cusp of the mild mentally retarded range and borderline ranges of intellectual ability (Tr. 279). Other evidence to support the conclusion of the ALJ includes a Psychiatric Review Technique of January 24, 2002, where the DDS Physician assessed Plaintiff capable of at least simple work (Tr. 298). In a second Psychiatric Review Technique on March 12, 2004, Dr. Regan, another DDS physician, concluded Plaintiff did not have a valid IQ score from 60 to 70 (Tr. 340) and concluded Plaintiff was not so limited as to preclude all work

related activity (Tr. 348). In a third Psychiatric Review Technique dated February 3, 2005, Dr. Livingston, a DDS Physician opined Plaintiff had an organic mental disorder, affective disorder and Anxiety related disorder but not mental retardation (Tr. 414). He opined she did not meet any listing and was capable of performing simple tasks with normal supervision (Tr. 426, 430).

Where there is a conflict in medical opinion, as there is here, it is the ALJ's duty to weigh the conflicting medical evidence. The resolution of conflicts in testimony are the province of the Commissioner and not the courts. *Smith v. Heckler*, 760 F. 2d 184, 187 (8th Cir. 1985). Because there was conflicting evidence on this issue, I conclude there is substantial evidence to support the ALJ's finding that Plaintiff did not meet Listing 12.05C because she did not have a valid IQ score in the range required by the listing.

2. Plaintiff next argues that, although the ALJ gave considerable weight to Dr. Gibson's functional opinion, the ALJ failed to include the portion of the opinion limiting Plaintiff to working in isolation (Doc 10, Plaintiff's Brief at 8-9). The Commissioner notes Plaintiff offers no evidence that the job of photo spotter would be performed in isolation. Moreover, the limitation against working in isolation is an environmental limitation, and many environmental limitations do not affect the ability to perform most jobs. Social Security Ruling 85-15.[5] I agree with the Commissioner that the ALJ's failure to include this term in the functional capacity finding was harmless error if it was error. It may be that the ALJ did not think that limitation was reasonable to include in light of her other work history or in light of the fact she previously

---

[5] "Social Security Rulings . . . are binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that we have adopted." 20 C.F.R. § 402.35(b)(1). Social Security Rulings are available at http://www.ssa.gov/OP_Home/rulings/

13

performed that job. In any event, I do not conclude the failure to include that limitation is a sufficient basis to require reversal or remand.

      3. Plaintiff next argues that the ALJ erred by failing to give Dr. Sharma's June 2006 opinion(s) great weight, as it was consistent with the other evidence of record (Doc. 18, Plaintiff's Brief at 9-10). The ALJ, however, chose to discount this opinion because it was inconsistent with Plaintiff's activities of daily living (living alone, preparing meals, visiting community center to play games and eat with other residents) and with other evidence (Tr. 22). *See* 20 C.F.R. § 404.1527(d)(4) (medical opinions weighed based on consistency with other evidence). In two of the prior consultative examinations signed by Dr. Sharma, Plaintiff was only found to have moderate limitations, which is clearly inconsistent with the more severe limitations Dr. Sharma outlined in his June 2006 opinion(s) (Tr. 324-25, 412). Even though the ALJ did not place significant weight on the State Agency reviewing doctors, they consistently found that Plaintiff was capable of performing a range of simple work that had limitations on working with others (Tr. 298, 302, 352, 430). Because the record contained sufficient evidence that undermined Dr. Sharma's June 2006 opinion, I conclude the ALJ had a valid basis to discount it.

      4. Plaintiff next contends the ALJ failed to follow Social Security Ruling 82-62 when determining that she could return to her past work as a photo spotter (Doc. 10, Plaintiff's Brief pp. 11-12. SSR 82-62 provides, in pertinent part:

> Determination of the claimant's ability to do [past relevant work] requires a careful appraisal of (1) the individual's statements as to which past work requirements can no longer be met and the reason(s) for his or her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet the physical and mental requirements of the work; and (3) in

14

some cases, supplementary or corroborative information from other sources such as employers, the Dictionary of Occupational Titles, etc., on the requirements of the work as generally performed in the economy.

. . . .

In addition, for a claim involving a mental/emotional impairment, care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work.

. . . .

In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:

1. A finding of fact as to the individual's RFC.

2. A finding of fact as to the physical and mental demands of the past job/occupation.

3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

Here, the ALJ satisfied the above elements of SSR 82-62 in that she considered Plaintiff's allegations, she considered the medical evidence, and she consulted a vocational expert to determine whether Plaintiff's functional limitations would permit the performance of her past work. Although the ALJ did not ask Plaintiff about the demands of her past work, the vocational expert's testimony was more than sufficient. The VE is an expert on vocational matters. Indeed, SSR 82-62 states that, "[t]his information will be derived from a detailed description of the work obtained from the claimant, employer, *or other informed source*." (emphasis added). Plaintiff has not identified any specific errors in the ALJ's step four finding that she could perform her past work, and "the claimant bears the burden of proving ... that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469,

15

474 (6th Cir. 2003). Regulation 404.1566(e) specifically contemplate the use of vocational experts in determining complex issues concerning the characteristics of specific occupations (*See Barker v. Shalala,* 40 F. 3d 789). Here the ALJ based her finding on the testimony of the VE and on the fact Plaintiff had previously performed this job. I conclude the ALJ's finding that Plaintiff could perform her past work was supported by substantial evidence and must be affirmed.

Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, I conclude that there is substantial evidence in the record to support the findings of the ALJ and the decision of the Commissioner denying the plaintiff's application for benefits. Accordingly, I RECOMMEND:

(1) The plaintiff's motion for summary judgment (Doc 9) be DENIED;

(2) The defendant's motion for summary judgment (Doc 13) be GRANTED;

(3) A judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure AFFIRMING the Commissioner's decision which denied benefits to the plaintiff; and,

(4) This action be DISMISSED.[6]

Dated: February 13, 2009          s/William B. Mitchell Carter
UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 149, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).